## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

TIMOTHY LOWE,

     Petitioner,

v.                                                                          Case No.  3:20-cv-5060-LC-MJF

MARK INCH,

     Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Timothy Lowe has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, with a supporting memorandum. (Docs. 1, 2). Respondent ("the State") moves to dismiss the petition as untimely. (Doc. 11). Lowe opposes the motion. (Doc. 13). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Lowe's petition should be dismissed as untimely.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND AND PROCEDURAL HISTORY

In Escambia County Circuit Court Case No. 2012-CF-6213, Lowe was convicted of five crimes: (1) Attempted Second Degree Murder Involving Discharge of a Firearm and Causing Great Bodily Harm; (2) Aggravated Assault on a Law Enforcement Officer (Officer Coverdale) Involving Actual Possession of a Firearm; (3) Aggravated Assault on a Law Enforcement Officer (Officer Pillow) Involving Actual Possession of a Firearm; (4) Resisting an Officer with Violence; and (5) Possession of Cocaine. (Doc. 11-1, Ex. A at 52-54 (jury verdict on Counts 1-4); Doc. 11-4, Ex. C at 247-53 (plea of nolo contendere to Count 5); Ex. A at 75-89 (judgment and sentence)).[2] Lowe was sentenced to a total term of 31 years of imprisonment. (Doc. 11-1, Ex. A at 56-70 (sentencing transcript); Ex. A at 75-89 (judgment and sentence)).[3]

---

[2] Citations to the state court record are to the electronically-filed exhibits attached to the State's motion to dismiss. (Doc. 11). When a page of an exhibits bears more than one page number, the court cites the number appearing at the bottom center of the page.

[3] Lowe was sentenced to 25 years of imprisonment for the attempted murder; 3 years of imprisonment for each aggravated assault (consecutive to each other and to the sentence on Count 1); 3 years of imprisonment for the resisting with violence (concurrent with Count 1); and 3 years of imprisonment for the drug possession (concurrent with Counts 1 and 4).

The Florida First District Court of Appeal ("First DCA") affirmed the judgment on January 6, 2015, *per curiam* and without written opinion. *Lowe v. State*, 156 So. 3d 1081 (Fla. 1st DCA 2015) (Table) (copy at Doc. 11-5, Ex. F).

On June 5, 2015, Lowe filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he amended on November 3, 2015. (Doc. 11-5, Ex.  G (initial motion); Doc. 11-6, Ex. I (amended motion)). By order rendered February 19, 2016, the state circuit court denied relief. (Doc. 11-6, Ex. J). Lowe did not appeal. (Doc. 1 at 5).

On March 19, 2019, Lowe filed a *pro se* petition for a belated postconviction appeal in the First DCA, which he later amended. (Doc. 11-6, Ex. K (initial petition); Doc. 11-7, Ex. M (amended petition)). On June 28, 2019, the First DCA denied the petition as untimely. (Doc. 11-7, Ex. N). Lowe's motion for rehearing was denied on August 14, 2019. (Doc. 11-7, Ex. O).

On September 3, 2019, Lowe filed a *pro se* petition for writ of habeas corpus in the First DCA, arguing that he was entitled to a belated postconviction appeal. (Doc. 11-7, Ex. P). The First DCA treated the application as a petition for belated postconviction appeal, and dismissed the petition as untimely on December 9, 2019. (Doc. 11-7, Exs. Q, R (citing Fla. R. App. P. 9.141(c)(5)(A))).

Lowe filed his *pro se* federal habeas petition on March 17, 2020. (Doc. 1 at 1). The State asserts that the petition is time barred. (Doc. 11).

## II. DISCUSSION

### A.  <u>Lowe's Petition Is Untimely</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Lowe's § 2254 petition, because the petition was filed after the AEDPA's effective date—April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA establishes a 1-year period during which a state prisoner may file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). This period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2).

The parties agree that § 2244(d)(1)(A) controls the commencement of the limitations period. (Doc. 2 at 4; Doc. 11 at 5).

Under § 2244(d)(1)(A), Lowe's judgment became final on April 6, 2015— ninety days after the First DCA's January 6, 2015, judgment—when Lowe's time for filing a *certiorari* petition in the United States Supreme Court expired. *See* 28 U.S.C. § 2244(d)(1); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that for petitioners who do not pursue direct review to the United States Supreme Court, their judgments become final for purposes of § 2244(d)(1)(A) "when the time for pursuing direct review in [the Supreme] Court, or in state court, expires."); *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) (holding that petitioner's limitations period began to run 90 days after the Florida appellate court affirmed his conviction).

The federal habeas limitations period began to run one day later, on April 7, 2015, and expired one year later, on April 7, 2016, absent tolling. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (holding that Federal Rule of Civil Procedure 6(a)(1) applies to calculation of the AEDPA's one-year limitations period;

thus, the limitations period begins to run from the day after the day of the event that triggers the period); *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (holding that the limitations period should be calculated according to the "anniversary method," whereby the limitations period expires on the one-year anniversary of the date it began to run).

Lowe allowed 59 days of the limitations period to pass before filing his Rule 3.850 motion on June 5, 2015. As a result of the filing of his Rule 3.850 motion, the limitations period was statutorily tolled until March 21, 2016, the date the 30-day period to appeal the circuit court's final order expired.[4] *See Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383-84 (11th Cir. 2006) (holding that Florida prisoner's postconviction motion remained "pending" under § 2244(d)(2), until the appeal period expired).

---

[4] The final ordering denying Lowe's Rule 3.850 motion was filed with the Clerk of the Escambia County Circuit Court on February 19, 2016. Under Florida law, a party must file a notice of appeal "within 30 days of rendition of the order to be reviewed." Fla. R. App. P. 9.110(b); Fla. R. Crim. P. 3.850(g). "An order is rendered when a signed, written order is filed with the clerk of the lower tribunal." Fla. R. App. P. 9.020(h).

The month of February 2016, had 29 days, as it was a "leap year." Thus, the 30-day period for Lowe to file a notice of appeal expired on March 20, 2016. However, because that day was a Sunday, Lowe had until the end of the day on Monday, March 21, 2016, to file his notice of appeal. *See* Fla. R. App. P. 9.420(f).

The period in which to file a federal habeas case commenced again on March 22, 2016, and expired 306 days later on January 21, 2017. Because January 21, 2017, was a Saturday, Lowe had until the end of the day on Monday, January 23, 2017, to file his federal habeas petition. *See* Fed. R.. Civ. P. 6(a). Lowe did not file his § 2254 petition until March 17, 2020. Lowe's petition is untimely by more than three years. Lowe concedes that his petition is untimely. (Doc. 2 at 4).[5]

## B.    Lowe Is Not Entitled to Equitable Tolling

Lowe asserts that he is entitled to equitable tolling. (Doc. 2 at 4-6; Doc. 13 at 1-3). Lowe alleges that he did not receive a copy of the state circuit court's February 19, 2016, order denying his postconviction motion until he inquired about the status of his motion and received the clerk of court's response, dated February 6, 2018,

---

[5] Lowe's state-court petitions for a belated postconviction appeal did not statutorily toll the limitations period, because: (1) they were not tolling-eligible applications under § 2244(d)(2); (2) they were not "properly filed" under § 2244(d)(2) because the First DCA determined they were untimely; and (3) they were filed after the § 2244 limitations period expired. *See Espinosa v. Sec'y, Dep't of Corr.*, 804 F.3d 1137 (11th Cir. 2015) (holding that a petition for a belated postconviction appeal "is not an application for collateral review within the meaning of section 2244(d)"); *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 417 (2005) (holding that a state postconviction petition rejected by the state court as untimely is not "properly filed" within the meaning of § 2244(d)(2)); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Lowe agrees that his petitions for a belated postconviction appeal did not qualify for statutory tolling under § 2244(d)(2). (Doc. 13 at 1).

informing him that the motion was denied. (*Id.*). Lowe claims that "the State Court's negligence in furnishing him the order denying his motion for postconviction relief . . . thwarted his ability to file a timely notice of appeal." (Doc. 13 at 1-2).

Lowe seeks equitable tolling for two alternative periods. Lowe first asserts, in his petition, that he is entitled to tolling "throughout the time of denial [of his postconviction motion] until his [state] petition for writ of Habeas Corpus was denied." (Doc. 2 at 5). Lowe later asserts, in response to the State's motion to dismiss, that he is entitled to equitable tolling "for the period starting when he filed the postconviction motion until the time he discovered that it was denied." (Doc. 13 at 2). Both arguments fail.

### 1.    *Equitable Tolling Standard*

A federal habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" of his federal habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (holding that equitable tolling is available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence").

Regarding the first prong of the equitable tolling standard, the Eleventh Circuit has held that "[t]he burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *San Martin*, 633 F.3d at 1268 (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002)). The petitioner must allege more than conclusory allegations, *id.* at 1268, and must "show a causal connection between the alleged extraordinary circumstances and the late filing of the federal habeas petition." *Id.* at 1267.

Regarding the diligence prong, the Supreme Court has clarified that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (citations and quotation marks omitted).

In *Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002), the Eleventh Circuit held that a habeas petitioner was entitled to equitable tolling where there was an 18-month delay in receiving notice of the Georgia Supreme Court's denial of his postconviction appeal. *Id.* at 710. Knight had specifically inquired, at the time he filed his appeal, when he could expect a ruling, and was assured by the clerk of court that he would be notified as soon as a decision issued. *Id.* Despite this assurance, Knight was not properly notified because the clerk inadvertently sent notice of the decision to the wrong person. *Id.* Sixteen months after the court's decision, Knight

Page 9 of 21

again inquired of the clerk as to the status of his case, and two months thereafter, he received notice that his application had been denied. *Id*. Five months after learning of the denial, Knight filed his § 2254 petition in federal court. *Knight*, 292 F.3d at 710.

The Eleventh Circuit held that the state court's failure to notify Knight of its decision qualified as an extraordinary circumstance and that Knight exercised diligence in inquiring about the decision. *Id*. at 711. The court noted that it was "understandable" that Knight did not make any inquiries until sixteen months after his appeal was filed, because the clerk of the court personally "assured him that he would be notified as soon as a decision was made." *Id*. The court held that until the clerk of court responded to Knight's second inquiry, Knight "had no way of knowing that his state remedies had been exhausted." *Id*. The court stated:

> The law is clear that [Knight] could not file a federal motion until his pending state application was denied. 28 U.S.C. § 2254(b)-(c). Therefore, he had every reason to delay such filing until he knew that state relief had been denied. Such circumstances meet the requirements of *Sandvik* so that Knight was entitled to have the time limitations of AEDPA equitably tolled *until the date that he received notice that the state court had denied relief*.

*Id*. (emphasis added).

In reaching its decision to equitably toll the limitations period, the Eleventh Circuit cautioned:

> We should note that not in every case will a prisoner be entitled to equitable tolling until he receives notice. Each case turns on its own facts. In this case Knight was assured that the court would contact him, then demonstrated diligence in pursuing information when it did not do so. These facts show that Knight is entitled to equitable tolling until . . . the day he received notice of the final denial of the Georgia Supreme Court.

*Knight*, 292 F.3d at 711. After applying statutory and equitable tolling, the Eleventh Circuit determined that because Knight had one year remaining on his federal habeas clock, his § 2254 petition was due within one year of the date he was informed of the Georgia Supreme Court's decision. *Id*. at 712.

By contrast, in *San Martin*, the Eleventh Circuit held that equitable tolling was not appropriate even though the petitioner asserted a two-week delay in receiving notice that the United States Supreme Court denied his petition for *certiorari*. 633 F.3d at 1268. The Eleventh Circuit determined that San Martin failed to exercise reasonable diligence in a number of ways. San Martin did not show that anyone had agreed to contact him regarding the final disposition of his certiorari petition. *Id*. at 1270. In addition, and of particular relevance here, San Martin failed to explain why he waited 349 days *after he learned of the Supreme Court's decision* to file a state postconviction motion, and then waited another 15 days after the disposition of that postconviction motion to file his federal habeas petition. *Id*. In light of San martin's tardiness, the court denied San Martin's request for equitable tolling.

More recently, in *Pollock v. Sec'y, Dep't of Corr.*, 664 F. App'x 770 (11th Cir. 2016), the Eleventh Circuit held that equitable tolling was not appropriate where the petitioner argued that the Florida Rules of Judicial Administration gave him a reasonable expectation that he would be notified once a decision was rendered in his postconviction appeal, but he did not receive such notification. *Id.* at 771. Pollock further contended that he exercised diligence in pursuing his case, because he filed a Notice of Inquiry with the state appellate court seventeen months after he initiated the appeal, and he had a general record of timely filings in his postconviction proceedings. *Id.* at 771, 773.

The Eleventh Circuit held that Pollock was not entitled to equitable tolling because he "failed to show he pursued his claims with due diligence." *Id.* at 773. Pollock's single inquiry to the state court clerk—made seventeen months after filing his postconviction motion—was "insufficient to show diligence." *Id*. The court distinguished *Knight* for these reasons:

> [F]irst, Pollock waited longer to inquire about the status of his motion than the appellant in *Knight*, and second, Pollock received no personal assurances from the court that it would promptly inform him of a decision, but instead relied on generally applicable state administrative rules that mandate notification.

*Id*. at 773. Pollock's failure to show diligence was dispositive of his equitable tolling claim.

Page 12 of 21

**2.**     *Lowe Did Not Pursue His Right Diligently*

Lowe's equitable tolling claim is based on his delayed receipt of the state court's February 19, 2016 order denying his postconviction motion. Lowe explains that he did not learn that his postconviction motion had been denied, until February 6, 2018, when he received the Escambia County Clerk of Court's response to his inquiry about the status of his motion. (Doc. 2 at 4). Lowe alleges:

> The Clerk advised that the denial was furnished to the Petitioner at Blackwater River Correctional Institution. At the time the order went out the Petitioner had been transferred to Okaloosa Correctional Institution. Once the Petitioner found out that the Clerk sent the order to Blackwater he then wrote to the mailroom at Blackwater Correctional Institution, asking them to forward the denial. On two separate occasions, May 17th and 23rd, 2018, the mailroom advised the Petitioner that he did not receive any legal mail in 2016.

(Doc. 2 at 4).

Lowe's correspondence with the Escambia County Clerk of Court is part of the state court record of Lowe's petition for a belated postconviction appeal. (*See* Doc. 11-6, Ex. K , App. A). On February 6, 2018, the Clerk wrote:

> This is to confirm that our office received and filed your Notice of Inquiry on February 2, 2018.
>
> We received your Amended Motion for Postconviction Relief on November 5, 2015. The Honorable Judge Miller issued an Order denying Amended Motion for Postconviction Relief on February 19, 2016. A copy was sent to you on February 22, 2016. The Clerk's Office has not received any additional motions in the above mentioned case. I

have attached a copy of the order issued on February 19, 2016 for your convenience.

(*Id.*).

The online state-court docket entries in Lowe's underlying criminal case confirm that Lowe submitted one Notice of Inquiry to the clerk of that court, which was filed on February 2, 2018. (*See* Attach. 1).[6] The clerk responded to Lowe's inquiry on February 6, 2018. (*Id.*). The docket reflects no other inquiries during the period from November 2015 (the date Lowe's amended motion was filed), to February 2, 2018. (*Id.*). Lowe does not allege that he submitted any other inquiries to the state court, nor does he specify dates or details of any additional inquires or responses.

Lowe's correspondence from Blackwater River Correctional Facility is also part of the record of Lowe's petition for a belated postconviction appeal. (Doc. 11-6, Ex. K , App. B-C). In correspondence dated May 17, 2018, and May 23, 2018, the

---

[6] The court takes judicial notice of the online state-court docket entries in Lowe's underlying criminal case. (*See* Attach. 1). Under Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). State court records of an inmate's postconviction proceedings generally satisfy this standard. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-53 (11th Cir. 2020).

mailroom supervisor of Blackwater advised Lowe that Lowe did not receive any incoming legal mail during the year 2016. (*Id.*).

Even were the undersigned to accept as true Lowe's allegation that he was not provided adequate notice of the state postconviction court's decision, Lowe still would not be entitled to equitable tolling, because he fails to establish that he exercised reasonable diligence.

First, unlike *Knight*, and similar to *Pollock*, Lowe made a *single* inquiry concerning the status of his postconviction motion. (*See* Attach. 1 (printout of electronic docket)); Doc. 11-6, Ex. K, App. A (Lowe's evidence of his inquiry and clerk's response)). That inquiry was made in February, 2018, which was *twenty-seven months* after he filed his amended postconviction motion on November 3, 2015, and *one full year* after his federal habeas clock expired. Lowe's single, long-delayed inquiry does not show "reasonable diligence." *See, e.g, Pollock* at 773 (distinguishing *Knight* and holding that petitioner's single inquiry with the state appellate court concerning the status of his postconviction appeal—made seventeen months after filing his initial brief—was insufficient to show reasonable diligence).

In addition, unlike *Knight*, Lowe received no personal assurance from the state circuit court that it would promptly inform him of a decision, but instead relied on generally applicable state administrative rules mandating notification. *See Pollack*

at 773 (distinguishing *Knight* for the additional reason that the petitioner received no personal assurances from the court that it would promptly inform him of a decision, but instead relied on the Florida Rules of Judicial Administration that mandated notification).

It also bears noting, as the court noted in *Pollack*, that the state court's quick response to Lowe's February 2018 inquiry supports a finding that the circumstances were not out of Lowe's control, if only he had inquired sooner. *See Pollack* at 773. Lowe had 306 days remaining on his federal habeas clock at the time he filed his Rule 3.850 motion. His amended motion was denied just 3 months after it was filed. Had Lowe exercised reasonable diligence and inquired sooner, he could have learned, prior to his federal clock expiring, that his Rule 3.850 motion had been denied.

Also significant to the diligence prong is the fact that Lowe waited *more than one year* after February 6, 2018 (the date he received notice of the denial of his postconviction motion) before seeking relief in any court—state or federal. Lowe also fails to explain why he waited more than eight months after the First DCA denied his petition for a belated postconviction appeal on June 28, 2019, to file his § 2254 petition. *See, e.g, San Martin* at 1270 (holding that petitioner failed to show "reasonable diligence" when he inexplicably waited 349 days after receiving notice

of the relevant court's decision before filing a state postconviction motion, and then waited another 15 days after disposition of the state-court motion before filing his federal habeas petition).

Lowe argues that his case is analogous to *Hollinger v. Sec'y Dep't of Corr.*, 334 F. App'x 302 (11th Cir. 2009), where the Eleventh Circuit granted equitable tolling. (*See* Doc. 13). *Hollinger*, however, is distinguishable on the diligence prong for several reasons: (1) Hollinger inquired of the state clerk of court about the status of his postconviction motion within *10 months* after filing it; (2) Hollinger made his inquiry to the clerk *before* his federal habeas clock expired; (3) Hollinger filed a *timely* state petition for a belated postconviction appeal *within 2 months* after receiving notice that his postconviction motion was denied; (4) Hollinger was *granted* a belated postconviction appeal; and (5) Hollinger filed his § 2254 petition *less than two months* after the state court's decision on his belated appeal. *Id*. at 304-07. Several of these factors also distinguish Lowe's case from *Mashburn v. Comm'r, Ala. Dep't of Corr.*, 713 F. App'x 832 (11th Cir. 2017).

Lowe's lack of reasonable diligence is dispositive of the equitable tolling claim. But even if the District Court were to determine that Lowe was entitled to equitable tolling, under *Knight*, Lowe would be entitled to such tolling only until February 6, 2018—the date he received notice that the state circuit court denied his

postconviction motion. *See Knight*, 292 F.3d at 711.[7] At that point, Lowe would have had 306 days remaining on his federal limitations clock, and his § 2254 petition would have been due on December 10, 2018.[8] Yet Lowe did not file his § 2254 petition until March 17, 2020.

Lowe's federal habeas petition is time barred. Lowe has not established entitlement to equitable tolling. Lowe's untimely petition should be dismissed.

## IV.    A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is

---

[7] Although Lowe makes the blanket assertion that he is entitled to equitable tolling until the First DCA denied his second petition for a belated postconviction appeal (*i.e.*, his state habeas petition), he has not demonstrated that equitable tolling would apply to that period. For example, Lowe does not allege that *after* February 6, 2018, he "pursu[ed] his rights diligently," but "some extraordinary circumstance stood in his way and prevented timely filing" of his federal habeas petition. *Holland*, 560 U.S. at 649. The state court's denial of Lowe's petition for a belated postconviction appeal does not, in itself, constitute an extraordinary circumstance.

[8] As indicated previously, Lowe allowed fifty-nine days of his federal habeas clock to run before he filed his initial Rule 3.850 motion. Lowe's limitations period was statutorily tolled during the pendency of that motion, until March 21, 2016, and then would be equitably tolled until February 6, 2018. Lowe's federal clock began running again on February 7, 2018, and expired 306 days later on December 9, 2018. Because that day was a Sunday, Lowe would have had until the end of the day on Monday, December 10, 2018, to file his § 2254 petition. *See* Fed. R. Civ. P. 6(a).

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the

requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Respondent's Motion to Dismiss (Doc. 11) be **GRANTED**.

2.    The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Timothy Jerome Lowe*, Escambia County Circuit Court Case No. 2012-CF-6213, be **DISMISSED WITH PREJUDICE** as time barred.

3.    The District Court **DENY** a certificate of appealability.

4.    The clerk of court close this case file.

At Panama City, Florida, this 19th day of November, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**